The first case on calendar, Smith v. Berryhill. Good morning. Good morning, Your Honors. May it please the Court, Counsel. This case, this is a Social Security Disability case. The plaintiff applied for Social Security Disability. It's both the Title II, which is Social Security Disability, and Title XVI. There is not a question. What is not in question in this case is that the plaintiff has capacity to work. That is not an issue. The ALJ, the Administrative Law Judge, found he could do sedentary work with a number of restrictions, sit-stand every, I think, thirty minutes, limited bending, et cetera, simple work only. That's not the question. What is established in this case, and there is absolutely no question, is that the vocational expert testified that with this exact residual functional capacity, there is not jobs if either one of two things occurs. A, there is absenteeism of one day a month or more, or B, he is off task. Eight to fourteen percent erode the job. Obviously, as you get to fourteen, it's almost eliminated, and fifteen percent eliminated. And the error of the Administrative Law Judge is in finding that there is absolutely no diminishment to the ability to work consistently. There is not a medical opinion that supports, there is not only not a medical opinion that supports that view, but every single medical opinion, especially on the physical side, but both on the physical and the mental, find that there is diminishment. There are three treating sources. There is the pain doctor. The pain doctor issued a form and said the conditions cause pain. They cause fatigue. They cause diminishment of concentration. They cause diminishment of work pace. And because of this, he therefore is off task, and estimated off task being greater than fifteen percent. The pain doctor did a deposition and said these are the reasons why it is exacerbated, because what we found in pain management is that when there is a comorbid condition of psychiatric impairments, that makes the person feel it even that much more, but that the off task is caused by that. Your client's original application for disability was in 2009? Correct, and there was a- Is this a continuation of the same proceeding? It is. It's gotten worse in several respects. He had surgery. Is it the case that all three of the doctors that you're referring to became treating physicians after he filed his application for disability? Perhaps so, but nonetheless, the case is decided in the middle of 2015. So the question is, does he meet this at any time up until the case is decided? It's an SSI case. So even if it goes back with instructions to the ALJ to determine when, he treats with Dr. Wiesner, who is the orthopedic surgeon who makes the same findings as Dr. Fang. All three of the plaintiff's treating physicians, by the way, agree that he can do some work. Wesendik, the primary, Wiesner, the orthopedic surgeon, and the pain clinic. They all agree that, but they say in doing it, he would have these limitations to off task and absenteeism. Wiesner did the surgery back in 2012. Forgive me, I don't remember exactly the date that he started treating him. Wesendik was a primary treating for a long time, and Fang started treating, I think, in 2013. But it all relates to some portion of the period, and when you bring a case, the judge has to determine the entire part, and there's nothing . . . It sounds like you're challenging the hypothetical that was presented to Pearson, the expert. We are challenging the judge's findings that there is absolutely no diminishment to his ability to stay on task, and there is absolutely no diminishment to his ability to work. So you're not challenging the hypothetical that was presented to Pearson? Only in the sense . . . no. In fact, the plaintiff's own treating sources say that he can do that work. The hypothetical we are challenging in that it does not find any diminishment to his ability to work on an ongoing and regular basis. None at all. Before the district court? Yeah. We made this exact same argument in the district, and that was our primary argument in the district court, that the ALJ erred in . . . that was the entire argument. I mean, we made others, too, but the entire argument is that the ALJ, by attempting to elevate his opinion over that of every single doctor who commented on the issue of off-task and absenteeism, and that's exacerbated by some psychological conditions as well. Dr. Gennori, who is the Commissioner's consultant, says he can't even do mild exertion. Our point is that it is almost the polar opposite of what this Court has when you have a situation where an ALJ makes a decision that may or may not be right, but there is at least some evidence, and you give the greatest consideration to what the administrative law judge says, the greatest deference. It is the polar opposite when the administrative law judge has treating source statements, has uncontradicted statements as to an issue, whether it's vending, whether it's lifting, whether it's standing, whether it's sitting, or whether it's off-task and absenteeism. Then it is exactly the opposite. The administrative law judge must give the greatest deference. This Court has found that the proper opinion is whether virtually the exact same thing, whether there is any way in which you can look at the treating doctor's opinions and say, yes, that's correct. In Balsamo . . . in Burgess, I'm sorry, Burgess v. Astrew, and then again in Gidding, it gives the standard of overwhelmingly compelling evidence, virtually the same standard only in reverse in terms of trying to sustain what an ALJ says. An ALJ can be completely wrong, but if there is some way, you have to defer. The ALJ, and in this case, you know, I don't have enough time to get into all the objective symptoms, but clearly throughout, and it's in our briefs, throughout there is pain unquestioned. There's injections after failed physical therapy, after a failed surgical procedure. And all the doctors, especially including the pain doctor, says these conditions cause pain. These conditions cause fatigue. These conditions cause diminishment to concentration. These conditions cause some days where you're halfway decent, but other days where it's horrible. And the treating doctor, Fang, Mikulovic, and Wiesner all say that on those horrible days, he would miss work and that work would be more than one day per month. And there is no opinion otherwise. Thank you, Your Honor. Thank you.  Good morning. May it please the Court. My name is June Byun for the Commissioner. Smith here did not meet his burden of proving that his impairments resulted in limitations, specifically with regard to being off task and absent. That exceeded the ALJ's residual functional capacity conclusion. But you do have doctors saying that he would be off task maybe up to a third of a day. I mean, would you hire somebody who was off task a third of a day unless they were working from home? Well, simply because three treating sources checked off these limitations in an arbitrary fishing-type question form, proffer by Smith's counsel does not, you know, support that. Well, there has to be a reason given for not accepting the view of a single treating physician. We've got three of them. Yes. Well, the ALJ here explicitly found that those specific limitations, which were, you know, merely checked off and they did not provide any basis, clinical or diagnostic findings that supported such limitations, were not supported. And the ALJ properly chose not to afford those. You mean not supported in the treatment notes? Yes. Or in the forms themselves. The forms themselves did not ask for the basis supporting such conclusions, nor were such extreme limitations supported by the doctor's own treatment notes, as the ALJ specifically detailed in his decision. Was that due in part because the ALJ treated those as mental impairments rather than as non-exertional physical impairments? Well, the ALJ here, those impairments of pain specifically, are neither exertional nor non-exertional, and we can't separate out. Why is pain not non-exertional? A non-exertional physical limitation. Well, although the pain, Smith alleges that the pain resulted from his physical impairments, the fact is that, you know, for example, the consultative examiners, they were well aware of Smith's allegations of pain. He was observed to be limping. Despite this, they found that he was capable of maintaining attention and concentration, regularly attend to a routine, and maintain a schedule. And... Was there a clear distinction, I guess is what I'm trying to get at, in ALJ's reasoning between treating pain as a mental impairment, that is, whether one is capable of scheduling and so forth, notwithstanding the pain, versus a non-exertional physical limitation, that is, I have such pain that I cannot concentrate. Well, I believe he did not because, as Smith himself says in the reply, it's a combination of his pain, his mental impairments, his physical impairments, all in conjunction that he is alleging prevents him from working. So you can't separate pain out from just... I mean, you can't just separate pain out. All right. Do you concede that pain as a non-exertional physical limitation could be disabling, at least could prevent somebody from working in the kind of jobs that were mentioned by ALJ? No. We do believe that pain is both exertional and non-exertional. And the commissioner's regulations find as such. Okay. And here Smith argues that the ALJ did not point to any contradictory evidence. But, in fact, there's four consultative examiners and a state agency review psychologist that specifically evaluate Smith's ability to sustain work-related activities over a normal eight-hour work day and a five-day work week. Here are the consultative examiners specifically.  Yes, they are physicians. There were two internal medicine doctors and two psychologists. That's Datta and Loomis. Datta and Loomis and... Noya. Noya and... Jansen. Janori. Janori. Janori. Well, what happens when you've got three treating physicians who say one thing and you get four non-treating physicians who say another? Doesn't our law require us to require the ALJ to credit the treating physician? Only if they're well-supported by the record. And here the treating source opinions were unsupported internally, and they were unsupported by other significant evidence of record, including the four consultative examiners, the state agency review psychologist Dr. Harding, and the Smith's robust activities of daily living, which the ALJ also considered, which undermined his allegations of pain to the degree alleged. Doing the laundry and shopping and driving to the mall, all of that can be done by somebody who is off task for 30% of the day. Well, he was also performing child care almost daily. He was what? He was also performing child care almost daily, and this court has held that such activities, including child care, it doesn't mean that Smith is a perfectly healthy individual, but it also doesn't mean that his pain is so disabling that he would be unable to do any work that exists in the national economy, which is what the ALJ found. Following up on Judge Stroni's question about the hypothetical, is the hypothetical here sufficient, or did it need to include the limitations that were described by the treating physicians regarding ability to stay on task? Well, the ALJ did not find that those limitations were ñ there was no basis for adopting those limitations and therefore appropriately did not ask the vocational expert such hypothetical questions. So here the ALJ properly asked the correct hypothetical question to the vocational expert at step five. So what are all these things that this person can do? What are all these jobs available? Well, the ñ He can retouch circuit boards. Yes, or he can ñ yes, it's the circuit boards. He can also ñ It's a document preparer, an order clerk within a food and beverage industry, and a printed circuit board touch-up screener, which are ñ which is a very limited range of simple sedentary work that allows for a sit-stand option every 30 minutes. So I just ñ I just wanted to reiterate that here that despite Smith's argument that there is contradictory evidence, specifically on the off-task and absenteeism limitations, and that the pain that comes from his physical impairments does not diminish the consultative examiner's assessments because pain cannot be simply taken out of the equation during an examination. Pain can be distracted. Yes, so if one is presumably in ñ So when you have a migraine headache, you can't do anything except lie down in a dark room. Right. And you can't do any work at all. Yes, but that would also ñ So the question is how much pain, how much of analysis was done, and we do have ñ well, we have conflicting opinions. Yes, and it is the ñ it's Smith's burden to prove that his ñ it's Smith's burden of proving that his impairments resulted in these limitations and not the ALJ's to disprove. At this point, it's the ñ the burden switches to the government to prove that there's work in the national economy that this person can do given his limitations. At step five, Your Honor? Yeah, that's what we're talking ñ aren't we talking about whether there's work in the national economy? I think that's for the government. Well, yes, but we ñ the burden of ñ I mean, the residual function of capacity finding is proven between steps three and four, and that is ñ and Smith still has the burden at that phase. Yes. Yes. Then the question is, is there anything he can do given the residual function that he has? And here, the ALJ probably found that because of the vocational expert. Touch-up circuit board. Okay. Can I ask one last question? You were relying on the consultative examinations. Did they ñ did those doctors, the internists, did they address the non-exertional physical limitations or only the exertional physical limitations of Smith? In other words, going back to my distinction here, you would agree, I think, that they can't opine  for discrediting his claim of a non-exertional physical limitation. I'm going to do my best to answer that question. I think I understood. The two consultative psychological exam ñ No, no, not the psychological. The physical, the internist. The internal medicine doctors. They say that he can stand, he can sit, he can do whatever. Yes. But they don't really address, do they, the non-exertional physical limitations, the pain, and the distractions from his physical limitations? Well, consultative examiners are familiar with the agency's policies and regulations and the residual functional capacity finding, which contemplate an ability to work 8 hours a day, 5 days a week. So when they are rendering their medical source statements, they have in their minds that the medical source statement is for somebody who can do a normal work week and a work day. So even if they don't talk about the non-physical limitations, when they're talking about the physical limitations, we're just going to assume that they were addressing both? Well, because they have to, in order to find that, I mean, because the consultative examiners do these examinations for the purposes of the agency's disability findings, they are well aware that their examination results are made for the purposes of determining the residual functional capacity finding, which in turn . . . Okay. All right. That's okay. I understand your point. Thank you. Thank you very much. Can I just follow up on what Judge Jacobs asked earlier, which is you rely on some of these treating physicians for their opinions on how much time he had to take off on a work day, but some of their treatment notes are inconsistent with their final opinions, like Miklovich says he doesn't qualify for disability. Wiesner said he's doing well after the hip replacements. He's making excellent progress. And there are other inconsistencies in the treatment notes with those forms they filled out on the amount of time he had to take off. How do you explain that? Yes, very easily, Your Honor. Number one, there are statements both ways. For example, Miklovich, who has no legal knowledge as to the standards of Social Security, does say he thinks he can work, which is . . . and his RFC says that and Fang's RFC says that and Wiesner's RFC. They all say that. That's not the issue. The issue is in doing that work, will he have any absenteeism or any off task? And that's the issue. And, yes, you can pick and choose, and you can find a few that are inconsistent and find some that are consistent. Miklovich says he doesn't qualify for disability. He's a doctor. He doesn't know what disability is. He says he doesn't qualify for disability, and then he says he doesn't qualify for disability because these are his impairments. And among the impairments are that if he tried to work, he'd be absent more than one day. Miklovich, being a doctor, doesn't know that the vocational expert said being off task or being absent means that there are no jobs. He can work. There's not an issue as to that. The question is whether there is work in the national economy he can do, and all the jobs that the court has mentioned can only be done if you can work consistently. And it's not a matter, as counsel has said, of extreme limitations. It's a matter of do the limitations produce any diminishment to off task and absenteeism. Clearly, everybody, and I really want to address because there was one factual misstatement that I really want to address. I've got 59 seconds. But the question is any, and ALJ finds none. The factual misstatement is that there are contrary opinions. There are not. Out of the opinions, and again, we're looking at physical, as you've mentioned, and psychological, the only one that specifically addressed it was the Social Security's own psychiatric examiner, the expert, Harding. And that's on transcript page 725. Moderate diminishment to sustaining a schedule, moderate diminishment to being able to stay on task. Moderate is not defined, but moderate is not zero, and that's what the ALJ found. None on the physical. Dada doesn't even address it at all. Jannori says he can't even do mild exertion. And while he doesn't specifically, he's not asked, the judge doesn't ask him, nobody at Social Security doesn't ask him to say whether can't even do mild exertion means you have some diminishment, staying on task or absenteeism. And the same thing with Loomis, who says these conditions on psychiatric will significantly interfere with the claimant's ability to even make it through a normal day, let alone work. So there is not one contradictory opinion specifically on that issue. And to the extent that they do talk about it, it not only is not contradictory, but it doesn't support what the ALJ says. Thank you. Thank you. Thank you both. We'll reserve decision.